UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. LALIBERTE,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | CV 15-1975-AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

　　　Plaintiff Laliberte filed this action on September 24, 2015. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 12.) On August 1, 2016, the parties filed a Joint Stipulation that addressed the disputed issues. The court has taken the matter under submission without oral argument.

　　　Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for further proceedings described below.

# I.

## PROCEDURAL BACKGROUND

On January 13, 2014, Laliberte filed an application for disability insurance benefits, alleging an onset date of October 30, 2012. Administrative Record ("AR") 23. The applications were denied initially and on reconsideration. AR 23, 80, 90. Laliberte requested a hearing before an Administrative Law Judge ("ALJ"). On April 14, 2015, the ALJ conducted a hearing at which Laliberte and a vocational expert testified. AR 36-69. On May 6, 2015, the ALJ issued a decision denying benefits. AR 20-31. On August 5, 2015, the Appeals Council denied the request for review. AR 1-5. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ determined that Laliberte met the insured status requirements at all times material to the decision. AR 25.

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Laliberte had the severe impairments of lumbar spine strain/sprain and lumbar disc displacement with radiculopathy. AR 25. Laliberte had the residual functional capacity ("RFC") to perform light work with a sit/stand option at will. AR 26. The ALJ found that Laliberte could not perform past relevant work, but acquired work skills from past relevant work that are transferable to other occupations existing in significant numbers in the national economy such as service dispatcher and administrative clerk. AR 29-30.

## C. Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v.*

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

1  *Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine
2  whether the claimant has presented objective medical evidence of an underlying
3  impairment 'which could reasonably be expected to produce the pain or other
4  symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)
5  (en banc)).

6        Second, when an ALJ concludes that a claimant is not malingering and has
7  satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity
8  of her symptoms only by offering specific, clear and convincing reasons for doing so.'"
9  *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v.*
10 *Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is
11 not credible 'must be sufficiently specific to allow a reviewing court to conclude the
12 adjudicator rejected the claimant's testimony on permissible grounds and did not
13 arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at
14 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify
15 what testimony is not credible and what evidence undermines the claimant's
16 complaints.'" *Id.* (citation omitted).

17       The ALJ found that Laliberte's medically determinable impairments could
18 reasonably be expected to cause the alleged symptoms, but his statements concerning
19 the intensity, persistence and limiting effects of his symptoms "are not entirely credible."
20 AR 27. The ALJ relied on two reasons: (1) conservative treatment; and (2) Laliberte's
21 testimony at the hearing. AR 29.

22       The ALJ's reasoning is not supported by substantial evidence. Conservative
23 treatment can be a sufficient reason to discount a claimant's testimony regarding the
24 severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Here,
25 however, the Agreed Medical Examiner Dr. Jackson, a board certified orthopaedic
26 surgeon, explained on July 31, 2014, that Laliberte "had undergone treatment
27 extensively on a conservative basis for his lower back which [for] the most part has
28

4

been a grandiose waste of time because[,] in view of the structural damage which is present specifically meaning the significant grade I spondylolisthesis with bilateral L5 pars inter-articularis defects[,] the only solution is surgical in nature for a L5-S1 fusion and probably a L4-5 fusion."  AR 458, 462; see also AR 459 (referring to "failure of the treatment program").  Dr. Jackson relied upon x-rays and an MRI in April 2014 which showed significant high level Grade I spondylolisthesis at L5-S1 and moderate facet spondylolisthesis at L4-L5.  AR 450.  Dr. Jackson noted that the CD he viewed of the MRI was "far less than ideal" and that the MRI report actually indicated Grade II spondylolisthesis with stenosis at L5-S1 as well as broad based disc herniations at every other lumbar level.  AR 450-51.

The ALJ gave substantial weight to Dr. Jackson's opinion.  AR 28.  Even assuming the ALJ intended to discount Dr. Jackson's opinion, the ALJ did not give reasons supported by substantial evidence for discounting his view that conservative treatment had been a waste of time.  The ALJ cited the undisputed facts in Dr. Mattar's reports that Laliberte did well after the first epidural steroid injection on May 21, 2013, and that medication helped him when the pain started to come back in September 2013.  AR 29, 354, 364.  However, Dr. Mattar reported in November 2013 that the second lumbar steroid injection provided "little relief."  AR 345.  In January 2014, Laliberte had pain to palpation on his the paraspinal muscles, limited range of motion, positive straight leg raising on the left and positive Patrick's sign on the left.  AR 338-39.  In March 2014, Dr. Thomas' neurodiagnostic examination revealed the same findings.  AR 401.  The electrodiagnostic study indicated chronic left L5 radiculopathy, and chronic right L4 radiculopathy, generalized sensory and motor peripheral neuropathy and absent bilateral tibial H-reflex suggestive of possible bilateral S1 radiculopathy but[2]

---

[2] Laliberte described that he sits in a chair to remove dishes from the dishwasher to the counter, and then stands to move the dishes from the counter to the cupboards.  AR 47.  Laliberte's testimony is consistent with medical opinions regarding postural activities from treating physicians and state agency reviewing physicians.  AR 28.

that diagnosis required clinical correlation. AR 402. In 2014, Dr. Tran noted that Laliberte's low back pain with radicular component had persisted despite conservative treatment. *E.g.,* AR 414, 423.

The ALJ's reliance on Laliberte's testimony fares no better. The ALJ states that Laliberte testified that he "felt capable of doing light type work where he could get up and down when he wanted." AR 29. Laliberte's testimony, read as a whole, cannot fairly be read as an admission that he could do light work. Laliberte was not asked specifically about light work. He was asked whether he could do "a job where you could get up and down when you wanted to." AR 54. Laliberte answered "I guess so, yeah sure." AR 55. Laliberte then described an attempt to obtain work as a manager with a shipping company but he failed the physical in sitting and lifting. AR 55-56. Laliberte testified that he can lift a gallon of milk off the table but not from the floor. AR 49. One gallon of water weighs close to 8½ pounds. *Medina v. Colvin*, 2016 U.S. Dist. LEXIS 19989, *8 n.4 (C.D. Cal. Feb. 17, 2016). Thus, Laliberte's testimony about lifting weight is consistent with sedentary work, not light work.

The ALJ also relied on Laliberte's testimony that his physicians did not discuss surgery with him. AR 29. Laliberte testified that Dr. Jackson told him that "weight loss would really help my back. . . . He said, 'Your top priority right now would go – do your weight loss.' . . . [H]e says, 'You have two ways to – you either live with it or have surgery.' And he said that, 'Well, you'll determine later on.'" AR 51-52. Dr. Jackson's report is in the record and, as discussed above, identified surgery as the only solution for the structural damage shown in the MRI and x-rays. Dr. Jackson wrote that the "biggest problem that [he] has at this time is his morbid exogenous obesity which from this examiner's perspective would be an absolute preclusion at this time to the performance of the potentially appropriate surgery." AR 458. Laliberte could undergo "the proposed lumbar spine surgery after he initially undergoes the gastric bypass surgery and hopefully loses close to 100 pounds in weight." AR 459. Thus, while it is

6

true that Dr. Jackson believed weight loss was the first priority, the recommended weight loss would not itself help the back, as Laliberte thought.  Rather, the weight loss was a prerequisite to the proposed lumbar surgery to repair or alleviate the structural damage.

The medical records reveal that Laliberte underwent gastric bypass and lost 110 pounds as of December 2014, but still had the same back pain.  Dr. Tran requested authorization for an orthopedic surgical consultation.  AR 482.  However, there are no later medical records and it is unknown what transpired with the request for authorization.  As of the date of the hearing, Laliberte had lost additional weight for a total of 145 pounds.  AR 46.

The ALJ's credibility finding is not supported by substantial evidence.  Indeed, Laliberte's testimony is fairly consistent with the functional limitations in the treating physician's reports.  AR 28.  This matter is remanded for reconsideration of Laliberte's credibility and the functional limitations in the treating physicians' reports.

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for further proceedings, including reconsideration of the claimant's credibility and the functional limitations in the treating physicians' reports.  AR 28 (limiting claimant to lifting, pulling and pushing up to 5 pounds; sit/stand option at will; no bending or stooping).

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 22, 2016

*Alicia G. Rosenberg*
ALICIA G. ROSENBERG
United States Magistrate Judge

7